## SCALES *vs.* DESHA, SHEPPARD & CO.

1. Where a note is made by J. H. S. and endorsed by R. S. and J. W. P. for the exclusive benefit of N. S., and J. W. P. at the time of the transaction agrees to be bound equally with the maker and first endorser, and N. S. afterwards, with the assent of the parties, executes a deed of trust to J. H. S. to secure them, and the property conveyed is levied on and claimed by the trustee under the deed, J. W. P., on the trial of the right of property, is an incompetent witness for the claimant, nor is his competency restored by a subsequent release to the claimant and R. S. of all his interest in the security and a bond of indemnity from them to him against all further losses on account of N. S.

2. Where the deposition of a witness is taken, when he is incompetent, and his competency is afterwards restored, a second deposition taken whilst the first remains on the file of the court, in which the witness merely states, "that the facts, deposed to in the deposition of his as

aforesaid first taken, are true," will not anthorise the admission of the first deposition as evidence.

3. In a trial of the right of property between one claiming under deed of trust for the benefit of certain creditors of the debtor and an attaching creditor, the debtor being dead and a decree of insolvency and distribution having been passed on his estate, his distributees are *prima facie* competent witnesses for the claimant.

4. If a witness, examined under commission, states facts which are admissible, but insufficient *per se* to make out the case, his deposition should not be excluded, if the party offering it announces his purpose to show their relevancy by other evidence.

5. Hearsay evidence is inadmissible.

Error to the Circuit Court of Talladega. Tried before the Hon. Nathan Cook.

This was a trial of the right of property in several slaves, levied on in July 1842, by virtue of an attachment in favor of the defendants in error against Nicholas Scales, and claimed by Joseph H. Scales, under a deed of trust executed to him by the defendant in attachment on the 21st October 1840. The claim was interposed by the plaintiff in error on the day of levy. During the pendency of the suit, which was tried at the Fall term 1848, Nicholas Scales died, and at the October term 1847, of the Orphans' Court of Talladega county, his estate was declared insolvent and final distribution of it subsequently made among his creditors. The claimant on the trial offered to read the deposition of James W. Perkins, to which the plaintiffs in attachment objected. It appears from the testimony of the witness, that in 1839, the claimant made a note of $3000, at six months date, which was endorsed by Robert Scales and the witness, and discounted at the Bank of Tennessee, for the exclusive benefit of said Nicholas Scales; that at the time of this transaction, the witness, notwithstanding he was the second endorser, agreed to be equally liable with the maker and first endorser for the amount of the note; that the deed of trust under which the claim was interposed was executed to secure the parties to said note; that, being informed that there was some difficulty about the property embraced in the deed of trust with the creditors of Nicholas Scales, the witness about the 10th February 1846 proposed to Joseph H. & Robert Scales, that each should pay his pro-

portional share of the note and stop litigation, to which they refused to assent; and that he thereupon assigned to said Joseph H. & Robert Scales all his claim against Nicholas Scales and took from them a bond of indemnity to secure him against all further losses on account of Nicholas Scales. This was not done to render him competent as a witness, nor did he know that it was in contemplation at the time to make him one. The court considered the witness incompetent and excluded his deposition from the jury. The claimant next offered to read two sets of depositions of Nicholas Perkins. The second states that at the time of his *first* examination he was interested in the event of the suit, but that *that* interest had been removed by a release prior to the re-examination, and the witness then goes on to testify, "that the facts, deposed to in the deposition of his as aforesaid *first* taken, are true." The claimant thereupon proposed to read the first deposition, but the plaintiff objected, and the court sustained the objection. The claimant thereupon offered to examine as witnesses Thos. H. P. Scales, Thaddeus Scales and Nicholas P. Scales, the sons and heirs at law of Nicholas Scales, deceasd. The plaintiff objected to them as incompetent witnesses and the court excluded them from testifying. The claimant likewise introduced Green T. McAfee, as a witness and the court excluded him on the ground that he was the husband of one of the daughters of Nicholas Scales, deceased. After the rejection of Thomas H. P, Thaddeus W, and Nicholas P. Scales, they executed a release to the plaintiffs in attachment of all interest in the slaves in controversy, and tendered it to the plaintiff's counsel, who refused to accept it, whereupon the court decided that they were still incompetent to testify. To prove the discount and renewals from time to time of the $3000 note at the Bank of Tennessee, the claimant offered to read the deposition of David Read, taken in a chancery cause in which the claimant was the complainant and plaintiff in attachment and others the defendants, and also the deposition of one Nichols taken in the same proceeding. The plaintiff moved to exclude the first, and certain portions of the other, which motion the court sustained. The several rulings of the court are now assigned as error.

McAfee & Jones, for plaintiff in error.

Rice, Morgan & Parsons for defendants:

1. Scales and McAfee being distributees of defendant in execution were incompetent witnessess. Carter v. Graves, 7 How. 6; Foster v. Nolin, 4 Miss. 18; Powell v. Powell 7 Ala. Rep. 582; Maury v. Mason, 8 Porter, 232; Powell v. Powell, 10 Ala. Rep. 910; Locke v. Noland, 11 Ala. Rep. 262; Williams' ex'r v. Temple, adm'r, 6 Ala. Rep. 656, and no release could render them competent. See cases cited *supra*—Hall v. Alexander, 9 Ala. Rep.—2. The release that was made falls within the influence of Mason v. Maury, 8 Porter, 232; and the *machinery* employed puts the case within the influence of Prewitt v. Houston, 8 Ala. Rep. 846.—3. The estate of the defendant in execution was declared insolvent, and the administrator discharged. The demand of the plaintiff in execution was never presented, and they had nothing but a lien on the property, which if defeated, they are barred by the statute of non claims, and the witnesses offered, being the distributees, are directly interested in putting the claim of plaintiffs in execution out of the way, as thereby they increase the fund for distribution.—4. There is no possibility of a balance of interest, as the witnesses are interested in getting rid of the lien of plaintiffs in execution upon the property—and on the other hand, have the right to redeem the property under the deed of trust; or if not redeemed, they will take the surplus when the deed is satisfied.—5. The deposition of Read was properly rejected as evidence, for he proved that all he had stated was mere hearsay—and so of the deposition of Perkins marked excluded.

COLLIER, C. J.—A release by a distributee to the administrator of all claims upon the estate, makes the distributee a competent witness for the administrator in a suit against the latter by a creditor of the estate; and the release is equally effectual to remove the interest whether it be founded upon a consideration or not. Hall v. Alexander, 9 Ala. Rep. 219; 3 Phil. Ev. C. & H's notes 1561; Boon v. Nelson's heirs, 2 Dan. Rep. 391. But a release to the administrator of "the demand in suit" is insufficient to make the distributee competent to es-

tablish a claim in favor of the estate; in such case a recovery will increase the fund to pay debts, and leave a larger amount for distribution, or if the administrator should be unsuccessful, the fund will be diminished by the payment of costs. Williams' ex'rs v. Temple, adm'r 6 Ala. Rep. 656.

In Maury's adm'r v. Mason's adm'r 8 Port. Rep. 211, it was held that a distributee cannot make himself a competent witness for the administrator by releasing all his interest in the estate to the co-distributees; that a release executed for such a purpose, whether valid or not as between the parties to it, will not, upon grounds of public policy, remove the disqualification. See also, Powell, et al. v. Powell, adm'x, 7 Ala. Rep. 582; Houston v. Prewitt, 8 Ala. Rep. 846; Powell, et al. v. Powell, 10 Ala. Rep. 900; Locke v. Noland, 11 Ala. 249; Bell v. Smith, 5 B. & C. Rep. 188; Scott v. Lloyd, 12 Pet. Rep. 145.

A release in order to remove the interest of the party releasing need not be actually delivered from the releasor to the releasee. If it be intended to operate as such, and presents an operative appearance to the court, it shall have that effect. A release good in form is available, though not actually delivered, but only entered on the minutes of the court. McCausland v. Neal, 3 Stew. & Port. Rep. 131; 2 Phil. Ev. C. & H's notes, 272; 3 ib. 1561, and cases there cited; 1 Greenl. Ev. § 429.

Bell v. Smith and others, 5 B. & Cresw. Rep. 188, was an action of assumpsit, brought in the name of Bell on a policy of insurance. The declaration averred that *Armet*, Gibb, Robertson and Wimble were at the time of the loss interested in the goods insured, to the full amount of the policy, and that it was made for their use and benfit. At the trial *Armet* was offered as a witness for the plaintiff. He was objected to as incompetent, and the plaintiffs gave in evidence a deed poll executed by A., before the commencement of the action, whereby he released to the plaintiffs all actions which he might have by reason of the policy, or for any monies to be recovered by them from the underwriters. They also gave in evidence an indenture executed by A. after the commencement of the action, whereby (after reciting the plaintiffs had effected the policy, that A. G. R. and W. were the persons interested,

Scales v. Desha, Shepherd & Co.

that actions had been commenced in the names of the plaintiffs, and that they being desirous of an indemnity against the costs, the Court of Common Pleas had ordered A. G. R. & W. to indemnify, and that L. & R. had agreed to it; A. G. R. & W. in consideration thereof and of ten shillings, assigned to L. & R. all their interest in the policy, and all benefit to be derived therefrom, and all monies to be recovered in said actions to and for their own exclusive use and benefit: *Held,* that A. was at all events still liable to the attorney employed to bring the action, and therefore incompetent. *Abbott, C. J.* said, "I am of opinion that Armet was not a competent witness. There can be no doubt that originally he was substantially, though not nominally a plaintiff in the cause; and we ought not to be astute to give effect to that which makes the real plaintiff a witness. The action being for his benefit, although brought in the names of the brokers, it must, until the contrary is shown, be presumed that it was brought by him, and by his authority, rather than by those who had no interest in it. If the action was brought by his authority, either express or implied, he became liable to pay the attorney employed to bring it, and he is still under that liability, nothing having been done to deprive the attorney of his right to recover his costs from him. The machinery therefore (nothwithstanding all the contrivances adopted) has still left this objection open; and upon this ground alone, without going further, I think that there is sufficient to warrant us in saying that Armet had an interest in obtaining a verdict for the plaintiffs. He was therefore improperly admitted to give evidence." The other members of the court concurred.

1. It is distinctly admitted by the witness, J. W. Perkins, that although he was the second indorser of the note made by Joseph H. Scales for the accommodation of N. Scales, deceased, he was equally liable for its payment with the other parties to it, and bound to contribute (if necessary) as between himself, the maker, and the prior indorser, one third of the amount. His assent to the trust deed executed by N. Scales is also clearly inferable from the fact that it was beneficial to him, and though informed of it he never objected to its provisions or otherwise repudiated it. True after he learned that there would be some difficulty in making the security availa-

ble he proposed to the maker of the note and the first endor-
ser that each of them should pay a proportionate part of it, and
thus avoid the trouble and expense of a suit in defending the
deed; but this proposition was not assented to.   The witness
then declared his unwillingness "to pay any costs, lawyer's
fees, or any other sort of expenses;" and to make himself cer-
tainly secure, about the 10th February 1846, he assigned to Jos-
H. and R. Scales all his claim against N. Scales, and took
from them a bond of indemnity to secure himself against all
further loss, &c. on account of N. Scales.   This assignment
was made without any other consideration than the bond of
indemnity.   Witness declares that he did not make the assign-
ment for the purpose of rendering himself competent as a wit-
ness—he did not then expect to be called on to testify, nor
does he know that such an event was contemplated by any one.
The note refered to was made on the 7th August 1840—the
claim interposed on the 9th July 1842 by the trustee, more
than three years and a half previous to the assignment by the
witness.   It was the duty of the trustee when the property
conveyed to him was attached, to assert the interest of the
*cestui que trust*, either by interposing a claim under the statute,
or in some other legal form.   He was invested with the legal
estate, and having accepted the trust, it was his duty to exe-
cute it; and perhaps he could not excuse its omission without
the assent of the beneficiaries.   Huckabee v. Billingsley at
this term.   The assent of the witness to the deed being im-
plied, we must intend that the claim of property was made
without objection by him, and therefore he is equally liable
with the other beneficiaries for all legitimate consequences.
Although the trustee is the sole claimant and liable alone to
the judgment for costs, if he should be unsuccessful, yet the
*cestui que trusts* being all interested in the litigation, are
alike responsible for the costs and expenses attending it,
and may be compelled by the claimant to contribute.   The
witness does not state at what time he declared to the trustee
an unwillingness to incur any responsibility in defending the
right to the slaves conveyed—conceding that such a declara-
tion could absolve the trustee from the performance of what
would otherwise be a legal duty.   He however states that
for the purpose of making himself secure, he made the assign-

ment and received the indemnity about the 10th February 1846. The irresistible inference from all this is, that he never objected to the claim of property until long after it was made, and consequently it was so initiated as to make it substantially the cause of all the beneficiaries. In this view of the question, it is clear that the witness when the assignment was made was liable to the claimant for such costs as had been previously incurred, as well as for counsel fees, and other proper charges, even conceding that a liability could not be enforced against him for these items of expense by the plaintiffs in attachment or the attornies retained by the claimant. If this be so, the cases cited conclusively establish that the witness had an interest which the assignment did not and could not divest. So that laying out of view the objection founded upon considerations of policy, the exclusion of the witness may well be defended upon the ground of interest.

2. It is not enough that a witness whose deposition has been taken is disinterested at the time the testimony is sought to be used, but every disqualifying interest should be removed before the witness is examined, or the deposition cannot be received as evidence. But a witness, whether examined at the bar *viva voce,* or out of court under a commission for that purpose, may be released and re-examined where his interest appears, and without such re-examination, his testimony given under the bias of interest will be rejected. 2 Phil. Ev. C. & H. notes, 261; 3 ib. 1561; 1 Greenl. Ev. 168. It is admitted that N. Perkins was interested, and therefore incompetent when his first deposition was taken; but his interest being removed by a release before his second deposition which affirmed the truth of the first was taken, it is insisted both depositions were admissible. If the first had been withdrawn from the files of the court under an order for that purpose, its truth reaffirmed, and it made part of the second, then it would have been admissible. Such however, was not the case. The witness merely states " that the facts deposed to, in the deposition of his, as aforesaid first taken, are true." Now the commission required the testimony to be transmitted to the Circuit Court, sealed up, &c. We may very well intend if it were necessary to sustain the decision below that the first deposition was an open paper on file when the second was taken, even con-

ceding that it would have been admissible under any circumstances, unless it had been enveloped with and constituted a part of the latter. The recital of the facts in the bill of exceptions does not authorise us to say that the last deposition was taken in such a manner as to legalize the admission of the first, and upon this point there is no available error.

3. It is difficult to perceive what interest the witnesses, T. H. P. Scales, N. P. Scales, Thaddeus C. Scales and G. T. McAfee have in the result of this cause. True, they are distributees of the estate of N. Scales, deceased, and will be entitled to share in it, if any thing is left after discharging its debts for distribution. But this is not a controversy with the administration, the result of which can in any manner increase or diminish the assets of the estate. It is a litigation in which the right of the plaintiff or claimant to charge the assets is in no manner drawn in question. The representative of the estate, if there was one, would have no interest in assisting or defeating either party, for the verdict and judgment could not in any manner affect him. Both parties claim under a lien paramount to the right of an administrator or the distributees; the plaintiff's lien originating by the levy of an attachment in the life time of the intestate, and the claimant's, under a deed of trust executed by the intestate before the attachment was sued out. In this view of the case, it seems to us, that these witnesses had no interest in the event of the cause—at most, their interest was balanced, and their testimony improperly rejected. We desire it however to be understood that our conclusion upon this point is founded upon the facts disclosed by the transscript before us, which are somewhat variant from the hypothesis on which the counsel for the plaintiffs below rest their argument, and may therefore be inapplicable if other evidence shall be adduced on another trial.

4. The deposition of D. Read though taken in a cause in chancery in which the plaintiffs and claimants with others, were parties, was by the agreement of counsel, to be considered as if taken in the cause now before us. We are then, only to inquire whether the facts stated by the witness are admissible evidence. Neither the bill of exceptions nor arguments of counsel, inform us for what reason the deposition was rejected, and even if some part of it is objectionable,

(which we need not enquire) we think it should not have been excluded *in toto,* if the claimant had announced his purpose to show its relevancy by other evidence. The witness certainly states some facts which are admissible, even if insufficient *per se,* to establish the fact of the indebtedness of N. Scales, deceased, if the claimants had shown that the deceased was connected with the transactions narrated. Upon offering the deposition, the claimant might have declared his intention to adduce the necessary assistant evidence, and if the deed of trust was before the jury, as we suppose it was, we should be inclined to think that the recitals upon its face were equivalent to such a declaration, and that the deposition should have been received. The court could have instructed the jury as to its legal effect. Upon this point it is needless to add more as the judgment must be reversed for an error already noticed. See Mardis' adm'r v. Shackleford, 4 Ala. Rep. 493; The P. & M. Bank of Mobile, v. Willis & Co. 5 Ala. Rep. 770.

5. The part of the deposition of W. Nichol, marked upon the transcript "excluded," was properly rejected. It is a mere statement that "for what purpose said note of $3000 was made, he does not know, but understood, at the time it was discounted, from some source, that the proceeds were for the benfit of some citizen of Alabama." This is nothing more than hearsay.

6. We will not stop to scan the refusal of the circuit judge to charge the jury as prayed. The legal questions arising upon it have been two often considered to make it necessary, and attention to our numerous decisions will prevent misapprehension or error upon a future trial, either on the part of the counsel or court. See Hooper v. Pair, 3 Port. Rep. 401; P. & M. Bank of Mobile v. Willis & Co. 5 Ala. Rep. 770; Mauldin & Terrell v. Mitchell, 14 ib. 814; Falkner v. Leith & Jones, 15 ib. 9, and many other cases.

It remains but to declare that the judgment is reversed, and the cause remanded.

CHILTON, J., not sitting.